IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS — EASTERN DIVISION

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| HOLLY MARINE TOWING, INC. | ) |
| | ) Case No. 07 B 0266 |
| | ) |
| | ) Honorable Susan Pierson Sonderby |
| Debtor. | ) |

**ORDER AUTHORIZING RETENTION AND EMPLOYMENT
BY DEBTOR-IN-POSSESSION OF FINANACIAL ADVISOR**

Upon the application of Holly Marine Towing, Inc., as debtor-in-possession ("Debtor"), dated June 6, 2007 (the "Application") and the affidavit of J. Gregory Barrow of General Capital Partners, LLC ("GCP"), sworn to on June 26, 2007, for an order approving and authorizing the employment by Debtor of General Capital Partners, LLC as a financial advisor, pursuant to the terms and conditions of the agreement between Debtor and GCP, a copy of which is attached hereto (the "Agreement"), and it appearing that GCP is a disinterested person within the meaning of 11 U.S.C. §§ 327(a) and 1107, and has no interest adverse to the estate with respect to matters for which it is to be retained, and good and sufficient cause appearing,

IT IS HEREBY ORDERED:

Pursuant to §§ 327(a) and 1107 of the Bankruptcy Code, Debtor is authorized to retain and employ GCP as a financial advisor pursuant to the terms and conditions of the Agreement, and to pay GCP the compensation and expenses as set forth in the Agreement, such compensation to be subject to an application and order by the Bankruptcy Court fixing a final allowance.

If no transaction takes place, GCP shall file an application for the approval of all fees, including the Monthly Fee, pursuant to § 330 of the Bankruptcy Code.

Further notice to creditors is waived.

Date: __JUN 2 7 2007__

_____
United States Bankruptcy Judge

## AMENDED AND RESTATED AGREEMENT BETWEEN
## DEBTOR AND GENERAL CAPITAL PARTNERS, LLC

THIS AGREEMENT is made this 27th day of June, 2007 by and between Holly Marine Towing, Inc., Debtor and Debtor-in-Possession ("Debtor"), Case #07-00266 in the United States Bankruptcy Court for the Northern District of Illinois, and General Capital Partners, LLC ("GCP"), a Colorado limited liability company.

### RECITALS

WHEREAS, Debtor owns and operates a marine towing company located in Cook County, Illinois.

WHEREAS, Debtor is in Chapter 11 proceedings, Case #07-00266, pending in the United States Bankruptcy Court for the Northern District of Illinois—Eastern Division, (the "Bankruptcy Court") and desires to either refinance, seek a joint venture partner, sell, lease or otherwise dispose of the Debtor's business as a going concern or either refinance, seek a joint venture partner, sell, or lease Debtor's assets or otherwise dispose of some or all of Debtor's owners or creditors' interests in the Debtor's estate (collectively the "Assets"); and

WHEREAS, GCP is an enterprise specializing in turnarounds, consulting, refinancing, sales as going concerns, sale of chattels and real property, liquidation of assets of financially troubled companies; and

WHEREAS, GCP has substantial experience in advertising, marketing, disposing and refinancing of major properties, including properties and related establishments owned or leased by debtors involved in bankruptcy proceedings; and

WHEREAS, Debtor and GCP desire to enter into this Agreement regarding the services to be performed by GCP and the compensation to be paid to GCP for its services;

NOW, THEREFORE, in consideration of the promises herein contained and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Debtor and GCP hereby agree, subject to all the terms, covenants, conditions and provisions hereinafter set forth, as follows:

### ARTICLE I
### Exclusive Agency & Retention

1.1   Exclusive Agency.   Debtor hereby retains GCP as Debtor's exclusive agent to provide certain financial advisory and related services to the Debtor, as specified herein, subject to the terms of this Agreement.

1.2     Retention. The term of GCP's exclusive agency shall begin as of the "Effective Date", the date by which the Bankruptcy Court determines to be the starting of this Agreement, and shall continue for one hundred sixty (160) days (the "Term"). Except for those provisions that survive the termination of this Agreement, in no event shall this Agreement extend beyond the completion of the contemplated Transactions (as defined below) and any subsequent payment periods.

If Debtor or Debtor's Representatives are contacted by a potential buyer, investor or lender with respect to any Transaction, the Debtor and/or the Debtor's Representatives shall direct such potential buyer, investor or lender to GCP, and shall advise GCP in writing within three (3) business days of such contact.

ARTICLE II
GCP Services & Commencement

2.1     Services. GCP shall perform the following services (the "Services"):

(a) Prepare a program which may include marketing the Assets through newspapers, magazines, journals, letters, fliers, signs, telephone solicitation, or such other methods as GCP may deem appropriate.

(b) Prepare advertising letters, fliers and/or similar sales materials which would include information regarding the Assets.

(c) Endeavor to locate parties who may have an interest in acquiring or refinancing the Assets.

(d) Circulate materials to interested parties regarding the Assets, after completing confidentiality documents with those interested parties. The Debtor gives GCP the right to execute and modify confidentiality agreements on the Debtor's behalf.

(e) Respond, provide information to, communicate and negotiate with and obtain offers from interested parties and make recommendations to the Debtor as to whether or not a particular offer should be accepted.

(f) Communicate regularly with the Debtor, FH Partners, L.P., the Official Committee of Unsecured Creditors, and the Internal Revenue Service in connection with the status of GCP's efforts with respect to the services GCP is providing.

(g) Notify the Debtor, FH Partners, L.P., the Official Committee of Unsecured Creditors, and the Internal Revenue Service of all offers received.

(h) Hold and manage a § 363 auction of Debtor's assets by **August 15, 2007** in conjunction with Debtor's counsel. This deadline may be extended by the parties and is subject to modification by the Court under orders authorizing such a sale.

ARTICLE III
Gross Value and Transaction

3.1     Gross Value. The term "Gross Value" as used in this Agreement shall include the aggregate consideration (1) received by the Debtor, the Debtor's equity interests and holders of any secured, priority and/or general unsecured claims against the Debtor, and/or (2) otherwise paid or received from or to be paid or received under any direct or indirect Transaction (as defined below in Section 3.3) (which consideration shall include amounts held in escrow). Gross Value includes, but is not limited to:

(a) Cash, stock, equity interests membership interests and or partnership interests;

(b) Payments made in installments;

(c) Notes, securities and other property;

(d) Liabilities, including all debt and guarantees assumed, refinanced or reorganized, on-balance sheet and off-balance sheet;

(e) Contingent payments (whether or not related to future earnings or operations);

(f) Any interest or other payments made on or in respect of debt;

(g) Any other payment made on or in respect to the equity interests (including, without limitation to the following, shareholder or membership interests) in the Debtor and/or its affiliates;

(h) Any consideration payable under consulting agreements and/or non-compete agreements;

(i) Any assignment of leases, whether real or personal property;

(j) Any release or assumption of bonds; and

(k) Any credit bids made by secured parties.

3.2     Valuation. For purposes of calculating the Gross Value received, any non-cash distributions shall be valued as follows:

(a) Publicly traded securities shall be valued at the average of their closing prices (as reported in The Wall Street Journal) for the five trading days prior to the closing of the contemplated Transaction whereby such securities are exchanged as consideration, unless the value of such securities is disclosed in a court approved disclosure statement in support of a confirmed Chapter 11 plan, the securities will then be valued based on such disclosure statement;

(b) Any other non-cash distributions shall be valued at the fair market value thereof on the day prior to closing as determined in good faith by the Debtor, GCP, FH Partners, L.P., the Official Committee of Unsecured Creditors, and the Internal Revenue Service; and

(c) If the parties are unable to agree upon the value of any other property, its value will be determined by the Bankruptcy Court.

3.3   Transaction. As used herein, the term "Transaction" shall include any transaction or series of transactions, which in each case may include the first to occur (and any subsequent Transactions thereafter), without limitation to the following:

(a) The financing, refinancing, or interim financing or other transaction pursuant to which the Debtor (or any of the interests in the Debtor or Assets of the Debtor) is financed by any person, group of persons, partnership, corporation or other entity (including without limitation, existing creditors, employees, affiliates, and/or interest holders) (collectively, a "Financier");

(b) Any merger, consolidation, business combination, or other transaction pursuant to which the Debtor (or any of the interests in the Debtor) is acquired by, or combined with, any person, group of persons, partnership, corporation or other entity (including, without limitation, existing creditors, employees, affiliates, and/or shareholders) (collectively, a "Purchaser");

(c) The acquisition, directly or indirectly, by a Purchaser (or by one or more persons acting together with a Purchaser pursuant to a written agreement or otherwise) in a single transaction or series of transactions, of all or a portion of the Assets of the Debtor;

(d) The closing of any sale, transfer or assumption of all or a portion of the assets, liabilities, stock or other interest of the Debtor.

3.4   No Deductions. The fees and expenses of GCP, and all other closing costs and/or adjustments, including adjustments and/or payments of whatever kind to lien holders, secured parties, mortgages or otherwise shall not be deducted when computing Gross Value or the Transaction Fee (as defined below in Section 4.3) to be paid GCP.

ARTICLE IV
Payment Terms

4.1   Expenses. The Debtor agrees to reimburse GCP for all expenses reasonably incurred by GCP in connection with the services set forth in this Agreement. GCP shall have an administrative claim against the Debtor for reimbursement of its expenses.

Expenses shall include, without limitation to the following, all reasonable travel expenses approved by the Debtor, accommodation expenses, on-line service charges, photocopy charges, advertising and marketing expenses, and meeting services incurred by GCP, and any attorneys' fees incurred to defend the terms of this Agreement (the "Expenses"). Expenses shall not include any general administrative or other overhead charges. The Expenses are separate from and in addition to any Transaction Fee to which GCP may be entitled.

(a) Payment of Expenses. The Expenses shall be paid in cash and reimbursed to GCP only after notice and hearing pursuant to section 330 of the Bankruptcy Code. The Expenses shall be paid by the Debtor at the realization or settlement of any Transaction, upon expiration of this Agreement or in the event GCP's services are terminated by Debtor pursuant to Article VI. Any Bankruptcy Court order shall contain language requiring that all of GCP's Expenses, as set forth in this Article IV, be subject to a carveout from any secured collateral of the Debtor to the extent that no unencumbered funds are available.

4.2   Monthly Fee.   GCP shall be paid a monthly fee of $5,000.00 per month ("Monthly Fee") for GCP's financial advisory services for the duration of this Agreement, which shall be paid for a total of four (4) months or until a Transaction occurs, whichever occurs first. GCP's initial Monthly Fee shall be paid on the day of the Court's approval of GCP's retention. Each additional payment thereafter shall be paid every thirty (30) days after the execution of this Agreement. The fixed Monthly Fees, to the extent paid to GCP, shall be credited against any Transaction Fee (as defined below in Section 4.3) to which GCP may be entitled. Any Bankruptcy Court order shall contain language that to the extent that unencumbered funds are not available, GCP's Monthly Fees as set forth in this Article IV shall be subject to a carveout from any secured collateral of the Debtor to the extent that no unencumbered funds are available.

(a) Payment of the Monthly Fee and Expenses. The payment of the Monthly Fee and reimbursed expenses shall be made in Care of GCP at the address set forth in Section 7.1(b) of this Agreement per the following wire instructions:

**Wire funds to:**   JP Morgan Chase Bank
Fbo: General Capital Partners, LLC
ABA# 021000021
Account # 219 776 7177

The expenses to be paid by the Company are separate and in addition to any Monthly Fees collected by GCP.

4.3   Transaction Fee.   In consideration of the services rendered by GCP hereunder as the exclusive financial advisor to Debtor, GCP shall receive a "Transaction Fee" resulting from a Transaction that shall be calculated as follows:

6% of total Gross Value up to $1,999,999;
5% of total Gross Value from $2,000,000 to $3,999,999;
4% of total Gross Value from $4,000,000 to $5,999,999;
3% of total Gross Value above $6,000,000.

The Transaction Fee is not calculated from the percentage of the total Gross Value; it is calculated from the aggregate of percentage fees from each of the $2,000,000 Gross Value increments. For example, a Transaction with a total Gross Value of $6,000,000 would yield a Transaction Fee of $299,999.85.

In lieu of any other Transaction Fee, GCP shall only receive a 2.5% flat fee (not aggregate) of total Gross Value of the gross proceeds of any Transaction in which the following parties are a Purchaser, Financier, or Third-Party Broker;
- American Commercial Barge Line LLC / American Commercial Lines Inc.
- Alan Stout's client to be named
- Key Financial Corporation
- Pelican Financial, Inc.

(a) Transaction Fee Payment. GCP's Transaction Fee shall be paid in cash at the realization or settlement of any Transaction. The Debtor's execution of this Agreement and the Bankruptcy Court's approval of this Agreement shall authorize any escrow agent or counsel to pay to GCP its Transaction Fee directly from the Gross Value of the closing Transaction contemplated by this Agreement. Any Transaction involving non-cash Gross Value shall require the Purchaser or Financier to pay GCP its Transaction Fee in cash, unless otherwise expressly agreed to by GCP or otherwise ordered by the Bankruptcy Court. Payment to GCP shall be in accordance with section 328(a) of the Bankruptcy Code. GCP's Transaction Fee shall be carved out from the Gross Value directly or indirectly received by the estate, all creditors and their successors and assigns, and all other parties in interest. Any Bankruptcy Court order shall contain language that to the extent that unencumbered funds are not available, GCP's fees and expenses as set forth in this Article IV shall be subject to a carveout from any secured collateral of the Debtor to the extent that no unencumbered funds are available.

(b) Third-Party Broker Compensation. If a third party broker represents a purchaser, that broker shall be entitled to 25% of the Transaction Fee realized by GCP from the Gross Value.

4.4   Transaction Tail. In the event this Agreement expires or is terminated, GCP shall be entitled to receive its Transaction Fee from any Transaction that results in Gross Value within twelve (12) months from the date of expiration or termination of this Agreement (the "Tail Period"), but only if the Debtor, the Official Committee of Unsecured Creditors, F.H. Partners, L.P., and GCP agree, or the bankruptcy court determines that, GCP was the procuring cause of such Transaction.

ARTICLE V
Bankruptcy Retention

Agreement Between Debtor and General Capital Partners, LLC

5.1     Bankruptcy Court Retention. The Debtor shall use its best efforts to seek an order from the Bankruptcy Court authorizing the employment of GCP pursuant to the terms of this Agreement, as professional persons pursuant to sections 327 and 328(a) of the Bankruptcy Code, the Bankruptcy Rules, applicable local rules and order of the Bankruptcy Court. The employment application and the order authorizing employment of GCP shall be provided to GCP sufficiently in advance of its filing, to enable GCP to review and comment thereon. If the order authorizing GCP's employment is obtained, the Debtor shall pay all fees and Expenses as promptly as possible in accordance with the terms of this Agreement, the Bankruptcy Code, the Bankruptcy Rules, and applicable local rules and orders of the Bankruptcy Court. Only GCP may waive, in whole or in part, the terms of this paragraph.

## ARTICLE VI
## Termination

6.1     Termination by Notice. Debtor may terminate this Agreement with fifteen (15) days prior notice to GCP.

6.2     Effect of Termination; Termination Fee. Except as set forth in this Section, in the event of termination of this Agreement by the Debtor as provided in Article VI or in the event that this case is converted to a Chapter 7 and the Chapter 7 Trustee does not assume this Agreement, then this Agreement shall forthwith become void and there shall be no liability or obligation on the part of the Parties or their respective affiliates, officers, directors or stockholders except with respect to the payment of Expenses and fees provided in Article IV generally.

## ARTICLE VII
## Miscellaneous and General

7.1     Notices. Any notice, request, instruction or other document to be given hereunder by any party to the other Parties shall be deemed delivered upon actual receipt and shall be in writing and delivered personally or sent by registered or certified mail, postage prepaid, reputable overnight courier, or by facsimile transmission as follows:

(a) If intended for the Debtor:

Holly Marine Towing, Inc.
Holly Headland

      9320 South Ewing Avenue
      Chicago, IL 60617

      - and -

      Freeborn & Peters LLP
      Attn: Joseph B. DiRago, Esq.
      311 S. Wacker Dr., Suite 3000
      Chicago, IL 60606

      - and -

      Foley & Lardner LLP
      Attn: Michael Small
      321 N. Clark, Suite 2800
      Chicago, IL 60610

      - and -

      United States Internal Revenue Service
      Attn: Brian Press
      200 W. Adams St., Suite 2300
      Chicago, IL 60606

(b) If intended for GCP:

      General Capital Partners, LLC
      Attn: J. Gregory Barrow
      600 Seventeenth Street, Suite 2350 South
      Denver, Colorado 80202

or other such addresses or entities either party hereto may from time to time direct by service of notice on the other party.

7.2    <u>Representations and Warranties by the Debtor</u>. The Debtor represents and warrants to GCP that to the best of its knowledge and belief the materials and information regarding the business and financial condition of the Debtor and its Assets ("Information") does not contain any untrue statements of material fact or omit to state a material fact necessary to make the statements therein, in light of the circumstances under which they were made, not misleading. The Debtor shall advise GCP promptly of the occurrence of any event or any other change prior to a Transaction resulting in Gross Value which could reasonably be expected to result in the Information containing any untrue statement of material fact or omitting to state any material fact necessary to make the statements contained therein, in light of the circumstances under which they were made, not misleading.

7.3  Indemnification. The Debtor shall indemnify GCP and its affiliates and their respective officers, directors, partners, counsel, employees, and agents ("Indemnified Persons") to the fullest extent lawful, from and against all claims, liabilities, losses, damages and expenses as incurred, related to or arising out of or in connection with (i) actions taken or omitted to be taken by the Debtor and its affiliates, officers, directors, counsel, employees or agents, (ii) actions taken or omitted to be taken by any Indemnified Person pursuant to the terms of, or in connection with services rendered pursuant to, the Agreement or proposed Transaction contemplated thereby or any Indemnified Person's role in connection therewith; provided, however, that the Debtor shall have no obligation to indemnify GCP, or provide contribution or reimbursement to GCP, for any losses, claims, damages, liability, or expenses that are (i) finally judicially determined to have resulted from or (ii) agreed by GCP to have resulted from, the reckless or willful misconduct, gross negligence, breach of fiduciary duty, bad faith or self dealing of GCP. If before the entry of an order closing the Chapter 11 case, GCP believes that it is entitled to the payment of any amounts by the Debtor on account of the Debtor's indemnification, contribution and/or reimbursement obligations, including, without limitation, the advancement of defense costs, GCP must file an application therefore in this Court, and the Debtor may not pay any such amounts to GCP before the entry of an order by this Court approving payment of such amounts.

The Debtor and/or its respective directors, officers, managers, members, shareholders, employees and agents shall not initiate any action or proceeding against GCP or any Indemnified Person unless such action or proceeding is based principally upon the willful misconduct or gross negligence of GCP or any such Indemnified Person.

7.4  Assignment. Neither party hereto shall assign this Agreement or any of its rights or interest hereunder without first obtaining the other party's written consent.

7.5  Non-Survival of Representations and Warranties. The representations and warranties made herein shall not survive beyond the Effective Time and any Renewal Periods or a termination of this Agreement, except to the extent a willful breach of such representation or intentional or knowing misrepresentation formed the basis for such termination. This Section 7.5 shall not limit any covenant or agreement of the Parties which by its terms contemplates performance after the Effective Time and Renewal Periods.

7.6  Entire Agreement. This Agreement constitutes the entire agreement between the parties hereto regarding the Transactions contemplated hereby and there are no other terms, covenants, conditions, provisions, warranties, representations or statements, oral or otherwise, of any kind whatsoever. Any Agreement hereafter made shall be ineffective to change, modify, discharge or effect an abandonment of this Agreement in whole or in part unless such agreement is in writing and signed by the party against whom enforcement of the change, modifications, discharge or abandonment is sought.

7.7 <u>Counterparts</u>. This Agreement may be executed in any number of counterparts, each of which shall be original, but such counterparts together shall constitute one and the same instrument.

7.8 <u>Governing Law</u>. This Agreement shall be governed by and construed in accordance with applicable Bankruptcy laws and, in the absence thereof, the laws of the State of Illinois.

7.9 <u>Severability</u>. If any term or other provision of this Agreement is invalid, illegal or unenforceable, all other provisions of this Agreement shall remain in full force and effect so long as the economic or legal substance of the transactions contemplated hereby is not affected in any manner materially adverse to any party.

7.10 <u>Press Announcements</u>. GCP may use the name and logo of the Company and briefly describe the services it provided to the Company in publications and/or marketing materials prepared and distributed by GCP at any time after the completion or public announcement of the closing of a Transaction.

7.11 <u>No Assurances</u>. By signing this Agreement, the Debtor expressly acknowledges that GCP does not guarantee, warrant or otherwise provide assurance that the Debtor will be able to implement or consummate any Transaction.

7.12 <u>Headings</u>. The headings, if any, incorporated in this Agreement are for the convenience and reference only and are not part of this Agreement and shall not in any way control, define, limit or add to the terms and conditions hereof.

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement under seal, as of the day and year first above written, subject to the approval of the U.S. Bankruptcy Court.

DEBTOR:

By : _____
      Holly Marine Towing, Inc.

GENERAL CAPITAL PARTNERS, LLC

By : _S. GREGORY BARROW_    06-21-07    For the Firm

STATE OF COLORADO   )
                    ) SS
COUNTY OF DENVER    )

IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS - EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| HOLLY MARINE TOWING, INC. | ) | Case No. 07 B 0266 |
| | ) | |
| Debtor. | ) | Honorable Susan Pierson Sonderby |

DECLARATION OF J. GREGORY BARROW

I, J. Gregory Barrow, being first duly sworn, on oath, state:

1. I am the founder and general and general manager of General Capital Partners, LLC ("General Capital"), an enterprise specializing in turnarounds, consulting, refinancing, sales as going concerns, sale of chattels and real property, liquidation of assets of financially troubled companies, with offices at 600 17th St., Suite 2350, Denver, Colorado 80202.

2. On January 8, 2007 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11, Title 11 of the United States Code (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Northern District of Illinois the ("Court").

4. This Affidavit is prepared in connection with the Application for an Order Authorizing the Employment and Retention of General Capital as Brokers for Debtors In Possession (the "Application") in which the Debtor seeks authority to employ General Capital as its broker in this case. General Capital will assist the Debtor with either refinancing its debt; seeking a joint venture partner; selling,

leasing, or otherwise disposing of the Debtor's business as a going concern; or selling or leasing the Debtor's assets or otherwise disposing of some or all of the Debtor's owner's or creditors' interests in the Debtor's estate.

5.      Except as specifically set forth herein, I have, to the best of my knowledge, no connection with the Debtor, any of its affiliated entities, its creditors or any other parties in interest herein, or its respective attorneys and advisors.

6.      General Capital has no pre-petition claims against the Debtor.

7.      Based on my current knowledge of the professionals involved in the Debtor's case, and to the best of my knowledge, I do not represent or have a relationship with any attorneys, accountants, financial consultants or investment bankers that would be adverse to the Debtor or its estate.

8.      I am confident that my employment by such creditors or equity security holders in unrelated matters will not affect my representation of the Debtor in these proceedings. I have determined that I have not been employed by any of the Debtor's creditors or equity security holders in matters related to this bankruptcy case.

9.      To the best of my knowledge, I have no connection with the United States Trustee, the Bankruptcy Judge in this case, or any person employed by the Office of the United States Trustee.

10.     Subject to Court approval and in accordance with Section 328 of the Bankruptcy Code, General Capital will seek payment for compensation on a percentage of the transaction amount, and reimbursement of actual, necessary

expenses incurred. General Capital's transaction fee shall be success based and will be based upon the gross proceeds of any transaction in the following amounts: (a) 6% on value from $1 to $1,999,999; (b) 5% on value from $2,000,000 to $3,999,999; (c) 4% on value from $4,000,000 to $5,999,999; 3% on value above $6,000,000. The transaction fee will not be calculated from the percentage of the total gross value; it will be calculated from the aggregate of percentage fees from each of the $2,000,000 gross value increments. For example, a transaction with a total gross value of $6,000,000 would yield a transaction fee of $299,999.85. If the assets shall be sold to certain entities to be named on an exclusive list approved by the Debtor, then General Capital's transaction fee shall be 2.5% of the total gross value (rather than from the aggregate of percentage fees).

11. General Capital shall receive a $5,000 initial retainer and $5,000.00 per month until the completion of the sale of Debtor's assets or refinancing of debt. The $5,000.00 monthly fee shall be credited against General Capital's transaction fee. All fees shall be carved out of the secured creditors' collateral if no unencumbered funds are available.

12. General Capital's expenses and charges may include, without limitation to the following, conference call telephone charges, volume mail and express mail charges, messenger services, hand delivery and other delivery charges, travel expenses, computerized research, transcription costs, document processing, volume photocopying charges, and a general monthly administrative charge which charge shall not exceed $250.00 per month.

13. I have received no promises as to compensation or payment in connection with this case other than in accordance with the provisions of the Bankruptcy Code. I have no agreement with any other entity to share with such entity any compensation received by me in connection with these Chapter 11 cases.

14. Based upon the information available to me, the undersigned represents that General Capital, insofar as I have been able to ascertain, holds or represents no interest adverse to the Debtor or its estate in the matter for which I seek to be engaged. Based on the foregoing, I believe that General Capital has complied with the requirements of 11 U.S.C. § 327(a), and is a "disinterested person" as defined in Section 101(14) of the Bankruptcy Code, as modified by Section 1107(b) of the Bankruptcy Code, and does not hold or represent an interest adverse to the interests of the Debtor's estate.

15. I represent that the foregoing constitutes a complete and full disclosure of all prior and current representation of clients that have any connection to this case. I have conducted a reasonable investigation to discover any conflicts. I will supplement and amend this Affidavit should I discover further pertinent relationships that require disclosure in these cases.

16. My retention to perform the services described in the Application is in the best interests of the Debtor and its estate. To the best of my knowledge, the information contained herein is true and accurate.

I hereby certify under penalties of perjury that the foregoing statements are true and correct to the best of my knowledge.

Dated this 27th day of June, 2007

FURTHER affiant sayeth not.

_____  06-27-07
J. Gregory Barrow

SUBSCRIBED AND SWORN to
before me this __27th__ day of June, 2007.

_____
Notary Public   Commission Expires 2/9/11

